## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DEBBIE McQUEEN,
      Plaintiff,

      vs

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 1:13-cv-88

Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

      Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum (Doc. 18).

### I. Procedural Background

      Plaintiff protectively filed applications for DIB and SSI in October 2009, alleging disability since March 31, 2008, due to back issues and mental health issues.[1] The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before administrative law judge (ALJ) Kenneth Wilson. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On June 24, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

---

[1]At the administrative hearing, plaintiff amended her disability onset date to July 12, 2007. (Tr. 45).

II.  **Analysis**

A.  **Legal Framework for Disability Determinations**

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI).   The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541,

2

548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th

Cir. 1999).

### B.    The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2008.

> 2. The [plaintiff] has not engaged in substantial gainful activity since July 12, 2007, the amended alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

> 3. The [plaintiff] has the following severe impairments: status post right ankle fracture; osteoarthritis of the lumbar spine; mood disorder (20 CFR 404.1520(c) and 416.920(c)).

> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform the following: lift ten pounds occasionally and less than ten pounds frequently; stand and walk four hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; unlimited in the ability to push/pull up to the ten pound capability; frequently climb ramps and stairs, but no more than one flight; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, and crouch; cannot crawl; must avoid concentrated exposure to vibrations and unprotected heights; maintain attention and concentration for two hour periods over an eight-hour workday with normal work breaks; interact appropriately with coworkers and supervisors; can interact with the general public occasionally, meaning no more than two hours; adapt to changes in the work setting; experiences mild to moderate pain resulting in one to two absences per month with two absences per month occurring no more

3

than twice per year; understand, remember, and carry out simple and detailed instructions, but no complex instructions.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] was born [in] . . . 1962 and was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from July 12, 2007, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 21-32).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2]Plaintiff's past relevant work was as an assembler, cleaner, and machine operator. (Tr. 31, 71).

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).   Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).   In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.   Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (6th Cir. 2004) (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D.   Specific Errors

On appeal, plaintiff argues that: (1) the ALJ erred in finding that there are a significant number of jobs in the region which plaintiff can perform; (2) the ALJ improperly weighed the medical opinions; and (3) the ALJ erred in his credibility analysis of plaintiff.   (Doc. 14.).   The Court will address plaintiff's arguments in turn.

5

1. The ALJ's Step Five determination is supported by substantial evidence.

For her first assignment of error, plaintiff maintains the ALJ erred at Step Five of the sequential analysis when he determined, based on the VE's testimony, that there are jobs that exist in significant numbers that plaintiff can perform. At the ALJ hearing, the VE testified that a person with plaintiff's residual functional capacity (RFC) as formulated by the ALJ would be capable of performing unskilled, sedentary work such as hand packer, laborer, assembler, and inspector. The VE further testified that there were 250 regional jobs and 21,500 national jobs for hand packers; 400 regional and 46,500 national jobs for laborers; 200 regional and 28,000 national jobs for assemblers; and 100 regional and 13,000 national jobs for inspectors. (Tr. 73-74). The ALJ relied on this testimony in determining that jobs exist in significant numbers in the national economy that plaintiff is capable of performing. (Tr. 31-32). Plaintiff argues that the work identified by the VE – totaling 950 regional jobs[2] – do not constitute a significant number of regional jobs. Plaintiff further argues that the ALJ did not meet his burden under Step Five because he did not explain *why* the jobs identified by the VE exist in significant numbers. (Doc. 14 at 5-7).

"Work which exists in the national economy" is defined as "work which exists in significant numbers either in the region where [plaintiff] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [plaintiff is] able to meet with [plaintiff's] physical or mental abilities and vocational qualifications." 20

---

[2]While plaintiff asserts the number of regional jobs identified by the VE totals 850, plaintiff misstates the VE's testimony. Plaintiff asserts the VE testified that there were 200 laborer jobs and 200 inspector jobs regionally. (Doc. 14 at 6). The VE actually testified that there are 400 regional laborer jobs and 100 regional inspector jobs. *See* Tr. 73-74.

6

C.F.R. § 404.1566(b). In determining what constitutes a significant number of jobs, the Court should apply a common sense standard to the facts in each individual plaintiff's case. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Some of the criteria the Court may consider include: the level of plaintiff's disability; the reliability of the vocational expert's testimony; the reliability of the plaintiff's testimony; the distance plaintiff is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. *Id.* at 275.

Plaintiff relies on *Hall* and *Ruffin v. Comm'r of Soc. Sec.*, No. 3:09-cv-2143, 2011 WL 4537905, at *3 (N.D. Ohio Aug. 31, 2011) (Report and Recommendation), *aff'd*, 2011 WL 4529335 (N.D. Ohio Sept. 28, 2011), to support her assertions that the ALJ erred in finding that the jobs identified by the VE exist in significant numbers and by not including an analysis of the *Hall* criteria in his decision. (Doc. 14 at 5-7). The Commissioner responds that the Sixth Circuit has "repeatedly held that numbers on par (or fewer) than the number of national and local jobs found by [the ALJ] constitute a significant number of jobs." (Doc. 17 at 4 n.4) (citing cases). The Commissioner further responds that *Hall* does not require ALJs to articulate their Step Five finding as plaintiff asserts and the factors identified for consideration by the Court "were suggestions only." (Doc. 17 at 6) (citing *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) ("*Hall* went on to state that these factors were suggestions only – the ALJ need not explicitly consider each factor.")). For the following reasons, the Court finds the ALJ's Step Five determination is supported by substantial evidence.

Plaintiff posits that because the *Hall* Court determined that 1,800 jobs in the Dayton region, which has a workforce of approximately 408,000, was a significant number of jobs, it is reasonable to extrapolate that 950 jobs in the Cincinnati region, with a workforce of

7

approximately 990,000 jobs, "cannot" be a significant number. (Doc. 14 at 6) (citing *Hall*, 837 F.2d at 275). Plaintiff appears to be advocating that the Court apply a proportionality analysis to the number of regional jobs identified by the VE, but the Sixth Circuit in *Hall* explicitly declined to endorse such an analysis. *Hall*, 837 F.2d at 275 ("when there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area"). Plaintiff fails to otherwise support her position with any authority establishing that 950 regional jobs is not a significant number as a matter of law. Moreover, plaintiff's position is contradicted by the pertinent case law. The Sixth Circuit has found as few as 125 regional jobs to be a significant number. *See Stewart v. Sullivan*, 904 F.2d 708, 1990 WL 75248, at *4 (6th Cir. June 6, 1990) (though seemingly low, 125 regional jobs in area with work force of less than 130,000 was significant number). *See also Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 375 (6th Cir. 2006) (holding that 870 regional jobs in the Southern District of Ohio "can constitute a significant number in the geographic region). As the ALJ relied on the VE's testimony that there are 950 regional jobs plaintiff is capable of performing, the undersigned finds that the ALJ identified a significant number of jobs such that he carried his burden at Step Five.

Finally, plaintiff's argument ignores the ALJ's determination that there are 109,000 jobs in the national economy that plaintiff is capable of performing. The ALJ's burden is to establish that a significant number of jobs exist in the national economy that plaintiff can perform – in the region where the plaintiff lives *or* in several other regions of the country. 20 C.F.R. § 404.1566. The 109,000 jobs identified by the VE outside of the region in which plaintiff lives constitute a significant number. *See, e.g.*, *Nash v. Sec'y of H.H.S.*, 59 F.3d 171, 1995 WL 363381, at *3 (6th

Cir. June 15, 1995) (finding that 70,000 jobs was a significant number of jobs in the national economy). *See also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578-79 (6th Cir. 2009) (4,800 jobs in the national economy is a significant number); *Putman v. Astrue*, No. 4:07-cv-63, 2009 WL 838155, at *2-3 (E.D. Tenn. Mar. 30, 2009) (citing cases) (200-250 regional jobs and 75,000 national jobs constitute significant numbers). Thus, the ALJ's decision at Step Five is substantially supported by the record even if the number of "regional" jobs are determined to be insufficient.

Accordingly, the Court finds that the ALJ's determination at Step Five of the sequential analysis is substantially supported and plaintiff's first assignment of error should be overruled.

2. The ALJ erred, in part, in weighing the medical opinions of record.

For her second assignment of error, plaintiff argues the ALJ improperly weighed the medical opinions of record. Plaintiff asserts the ALJ erred by giving greater weight to the opinions of the nonexamining physicians and psychologists of record, while giving less weight to her treating and examining doctors. Plaintiff maintains that the opinions of the treating and examining mental health providers of record are consistent and all support a finding that plaintiff's mental health impairment is disabling. Likewise, plaintiff contends that the ALJ improperly gave less weight to the opinion of her treating family physician as the record supports a finding that her physical impairments result in disabling functional limitations.

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir.

9

1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

"Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)). *See also Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). If the ALJ declines to give a treating source's opinion controlling weight, the ALJ must balance the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927 in determining what weight to give the opinion. *See Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. §§ 404.1527(c)(2)(i)(ii), 416.927(c)(2)(i)(ii); *Wilson*, 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6); *Gayheart,* 710 F.3d at 376; *Wilson*, 378 F.3d at 544.

"Importantly, the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in [the] notice of determination or decision for the weight [given a] treating source's opinion.'"  *Cole*, 661 F.3d at 937 (citing former 20 C.F.R. § 404.1527(d)(2)[3]).  Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id*. (citing SSR 96-2p).

Here, the ALJ formulated plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform the following: lift ten pounds occasionally and less than ten pounds frequently; stand and walk four hours out of an eight-hour workday; sit for six hours out of an eight-hour workday; unlimited in the ability to push/pull up to the ten pound capability; frequently climb ramps and stairs, but no more than one flight; never climb ladders, ropes, or scaffolds; occasionally stoop, kneel, and crouch; cannot crawl; must avoid concentrated exposure to vibrations and unprotected heights; maintain attention and concentration for two hour periods over an eight-hour workday with normal work breaks; interact appropriately with coworkers and supervisors; can interact with the general public occasionally, meaning no more than two hours; adapt to changes in the work setting; experiences mild to moderate pain resulting in one to two absences per month with two absences per month occurring no more than twice per year; understand, remember, and carry out simple and detailed instructions, but no complex instructions.

(Tr. 26).   In making the determination as to plaintiff's mental RFC, the ALJ relied on the opinions of: (1) nonexamining state agency psychologist Karen Steiger, Ph.D. (Tr. 301-03); (2) consultative examining psychologist Stephen P. Fritsch, Psy.D. (Tr. 295-300); (3) plaintiff's treating psychiatrist, Silvia Colmenares, M.D. (Tr. 368-74); and (4) examining psychologist Emily Davis, Psy.D.  (Tr. 320-21).   As to plaintiff's physical RFC, the ALJ relied on January 2010, April 2010, and July 2010 opinions from plaintiff's treating physician Theodore Hunter,

---

[3]Title 20 C.F.R. § 404.1527 was amended effective March 26, 2012.   The provision governing the weight to be afforded a medical opinion that was previously found at § 404.1527(d) is now found at § 404.1527(c).

11

M.D., (Tr. 282-85, 322-23, 325-34) and the opinion of nonexamining state agency physician S.

Park. (Tr. 288-94). The ALJ gave "good weight" to Dr. Steiger's opinion as it was consistent

with the objective medical evidence of record and plaintiff's subjective reports; "little weight" to

Dr. Colmenares' opinion as her opinion that plaintiff suffers from marked or extreme limitations

and episodes of decompensation of extended duration were not supported by the objective

evidence of record; and "little weight" to Dr. Davis' assessment as it was based on only one

interview and is inconsistent with the objective findings in plaintiff's treatment notes. The ALJ

gave "some weight" to Dr. Hunter's January 2010 opinion, but "little weight" to the April and

July 2010 opinions as they were not supported by his diagnoses or objective findings; contained

inconsistent conclusions; and were not proportionate to the objective findings in the treatment

notes. The ALJ gave "good weight" to Dr. Park's opinions, but found that plaintiff had further

physical limitations due to residual effects from her ankle impairment. For the reasons that

follow, the undersigned finds that the ALJ erred in discounting the opinion of plaintiff's treating

psychiatrist, but properly weighed the medical opinions of record regarding plaintiff's physical

impairments.

**Mental Impairment Opinions.** Plaintiff began mental health treatment at Butler

Behavioral Health Services in July 2010. (Tr. 338-41). At the time of her initial assessment

with Dr. Colmenares, plaintiff presented with overt panic attacks, anxiety, irritability,

intermittent social withdrawal, tearfulness, difficulty sleeping, unpredictable mood swings,

depression, occasional suicidal ideation, and avoidance of friends. On mental status

examination, Dr. Colmenares noted that plaintiff was "very anxious, dysphoric." Plaintiff was

observed to be polite, cooperative, and anxious; her thought processes were organized; her affect

12

was dysphoric, anxious, tearful, depressed, irritable, and labile.  (Tr. 340).  Dr. Colmenares

diagnosed mood disorder, a panic disorder without agoraphobia, chronic post-traumatic stress

disorder (PTSD), and rule out bipolar II disorder.  (Tr. 340).  Plaintiff was prescribed Abilify in

addition to the medications previously prescribed by her treating physician (Zoloft, Valium, and

Ambien).  (Tr. 341, 342).  Treatment records from September 2010 show some improvement

with medications; plaintiff was still having intermittent panic attacks, persistent "racing mind,"

and difficulty sleeping.  On mental status exam, plaintiff's speech was somewhat pressured, her

mood was a little improved, her affect was slightly anxious, and her symptoms were

mood-congruent.  (Tr. 342-43).  In November 2010, plaintiff reported frequent panic attacks,

but a decrease in mood swings.  On mental status exam, plaintiff displayed an anxious mood,

slightly anxious affect, and mood-congruent symptoms.  (Tr. 355-56).  Plaintiff's therapist

reported in October 2010 that plaintiff was very anxious being around people and that she did not

like to leave the house.  (Tr. 336).  In January 2011, Dr. Colmenares reported that plaintiff

continued to feel exhausted, tired, irritable, and "down"; she reported persistent racing mind and

mood swings and rare panic breakthroughs.  (Tr. 391).  On mental status exam, plaintiff was

still irritable, moody, and down; her affect was somewhat dysphoric; and her symptoms were

mood-congruent.  (Tr. 391).  Therapy notes from February 2011 show plaintiff was depressed

and moody, and not as motivated.  (Tr. 389).  In March 2011, Dr. Colmenares noted plaintiff's

mood was still up and down, her affect was slightly anxious, and her symptoms were

mood-congruent.  (Tr. 386).  Plaintiff was still bothered by frequent mood swings and Dr.

Colmenares discussed adding a second mood stabilizer.  (Tr. 386).  On mental status exam in

13

April 2011, Dr. Colmenares observed plaintiff's mood was "a little better," her affect was more

spontaneous and brighter, and her symptoms were mood-congruent.   (Tr. 378-79).

In March 2011, Dr. Colmenares completed a mental RFC questionnaire on plaintiff's

behalf.   (Tr. 369-74).   Dr. Colmenares reported plaintiff's diagnoses as mood disorder, chronic

PTSD, panic disorder without agoraphobia, and rule out bipolar disorder II.   She assigned

plaintiff a GAF score of 40-45.[3]   (Tr. 369).   Dr. Colmenares identified the following clinical

findings as support for her opinion: "[plaintiff] frequently presents with an anxious and

dysphoric/tearful affect, mood-congruent (objective findings)."   (*Id.*).   Dr. Colmenares

described plaintiff's signs and symptoms as follows:   anhedonia or pervasive loss of interest in

almost all activities, decreased energy, thoughts of suicide off and on, verbal impulsivity,

generalized persistent anxiety, mood disturbance, recurrent and intrusive recollections of a

traumatic experience, persistent disturbance of mood or affect, emotional withdrawal or isolation,

motor tension, emotional lability, autonomic hyperactivity, sleep disturbance, and recurrent

severe panic attacks.   (Tr. 370).   Dr. Colmenares opined that plaintiff had "no useful ability to

function" in completing a normal workday and workweek without interruptions from

psychologically based symptoms; getting along with coworkers or peers without unduly

distracting them or exhibiting behavioral extremes; dealing with the stress of semiskilled and

skilled work; and traveling in unfamiliar places.   (Tr. 372-74).   Dr. Colmenares opined that

plaintiff's other mental work-related functions were limited to a somewhat lesser extent.   (*Id.*).

---

[3]A GAF score represents "the clinician's judgment of the individual's overall level of functioning."
American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev.
2000).   The GAF score is taken from the GAF scale, which "is to be rated with respect only to psychological, social,
and occupational functioning."   *Id.*   The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger
of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act
with clear expectation of death).   *Id.* at 34.   GAF scores of 41 to 50 indicates an individual with "serious symptoms
. . . OR any serious impairment in social, occupational, or school functioning."   *Id.* at 32.

14

Dr. Colmenares concluded that plaintiff had marked restrictions in her activities of daily living; extreme difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and one to two episodes of decompensation of extended duration. (Tr. 372). Dr. Colmenares explained her opinion as follows: "[plaintiff] is chronically, social withdrawn due to severe, ongoing anxiety and poor affective modulation. She has only responded partially to introduction of mood stabilizers, and remains significantly agoraphobic and avoidant." (Tr. 371). Dr. Colmenares further explained that plaintiff's physical impairments exacerbate her psychiatric impairments. (Tr. 372).

The ALJ gave "little weight" to Dr. Colmenares' opinion that plaintiff suffered from marked and extreme functional limitations and one to two episodes of decompensation (Tr. 372-73) because they were inconsistent with progress notes that established an improvement in plaintiff's mental impairments over time with treatment. (Tr. 23). The ALJ also noted that the record evidence did not demonstrate that plaintiff had experienced episodes of decompensation as there was evidence of only one psychiatric hospitalization that lasted less than a week and, accordingly, was not of "extended duration." (*Id.*, citing Tr. 434). The ALJ gave "some weight" to Dr. Colmenares' opinions on plaintiff's mental abilities and aptitudes, finding that plaintiff's moderate limitations in concentration, persistence, or pace and overall intellectual abilities (as determined by Dr. Steiger and Dr. Fritsch) supported a finding that she had some limitations in her ability to perform skilled and semiskilled work. (Tr. 29, citing Tr. 371-72). However, the ALJ determined that Dr. Colmenares' opinion that plaintiff is unable to complete a normal workday or workweek due to psychological symptoms was not supported by plaintiff's improved status as reflected in the treatment notes. (*Id.*).

15

Plaintiff argues the ALJ erred in giving only "little" and "some" weight to Dr. Colmenares' opinions given the consistency of the treating psychiatrist's opinions with those of the other examining and treating physicians: consultative examiner Dr. Fritsch opined that in January 2010 plaintiff was markedly impaired in her ability to withstand the stress and pressure of day-to-day work activities and moderately impaired in her ability to maintain attention, concentration, persistence, and pace for even simple repetitive tasks (Tr. 298-99); examining psychologist Dr. Davis opined in April 2010 that plaintiff was markedly to extremely impaired in her understanding and memory, her ability to sustain concentration and persistence, and social interaction and adaptation (Tr. 319-20); and treatment records from Dr. Hunter, plaintiff's family physician, reflect plaintiff's anxiety and depression and associated symptoms (Tr. 284-85).

For the reasons that follow, the undersigned finds the ALJ erred in his evaluation of the opinions of plaintiff's treating psychiatrist, Dr. Colmenares. First, the ALJ did not employ the appropriate methodology in weighing Dr. Colmenares' opinion. Social Security regulations provide that the ALJ must first determine whether to give controlling weight to a treating source's opinion by assessing its supportability and consistency with other substantial record evidence. *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). After determining whether the opinion is entitled to controlling weight, "the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship" and the other factors enunciated in §§ 404.1527(c)(2)-(6) and 416.927(c)(2)-(6). *Id.* The ALJ did not follow this framework here. Rather, the ALJ first weighed the opinion of non-examining state agency reviewing psychologist, Dr. Steiger, and gave it "good weight" for being "consistent with the objective medical evidence of record as well as the [plaintiff]'s subjective reports." (Tr. 23).

16

The ALJ then discussed Dr. Colmenares' opinions, but failed to consider the requisite regulatory factors. The ALJ made no finding as to whether Dr. Colmenares' findings were entitled to controlling weight as the treating psychiatrist and did not apply the regulatory factors; he merely determined that they were deserving of "little weight" because of their purported inconsistency with treatment records documenting plaintiff's improvement. (Tr. 23, 29). Notably, the ALJ did not provide citations to the records upon which he based this determination. *Gayheart* makes clear that such an analysis is insufficient. Not only did the ALJ fail to engage in the two-step process of first determining whether Dr. Colmenares' opinion was entitled to controlling weight, his decision does not reflect that he considered the §§ 404.1527(c) and 416.927(c) factors in affording it "little weight."

Second, the ALJ failed to provide a good reason for discounting plaintiff's treating psychiatrist's opinion. The only reason given by the ALJ for discounting Dr. Colmenares' opinion is his determination that later treatment records demonstrated that plaintiff improved with treatment and such improvement is inconsistent with Dr. Colmenares' findings of marked or extreme limitations. *See* Tr. 23. Even if plaintiff experienced some improvement in her mood and affect over the course of treatment, "improvement" is a relative concept. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011) ("The ALJ made no inquiry into the degree of improvement, or from what baseline Plaintiff had improved. Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment. This cannot be so."). There is no evidentiary basis for determining that plaintiff's depression and anxiety had "improved" such that Dr. Colmenares' findings were no longer apt. Rather, review of the record

17

demonstrates that plaintiff's mental impairments continued to fluctuate and manifest in significant symptomology.  *See* Tr. 386 (psychiatric notes from March 2011 include findings that plaintiff's "mood is 'still up and down' affect is slightly anxious, mood-congruent" and plaintiff reported frequent mood changes and the need for additional mood stabilizing medication was discussed); Tr. 394 (in January 2011 plaintiff reported having a panic attack while preparing to visit her daughter over the holidays); Tr. 369 (Dr. Colmenares opined in March 2011 that plaintiff's GAF was 40-45, which corresponds with serious symptoms and impairments in occupational functioning).   The record reflects that plaintiff continued to experience serious symptoms despite some improvement, including panic attacks and mood swings.   Therefore, the ALJ's decision to discount Dr. Colmenares' opinion on this basis is without substantial support.

Third, the §§ 404.1527(c) and 416.927(c) factors support giving greater weight to Dr. Colmenares' opinion.   Dr. Colmenares' opinion that plaintiff has marked to severe functional limitations due to her mental impairments is well-supported by clinical observations of plaintiff's tearful and dysphoric affect, anxious and depressed mood, and limited insight and judgment   Tr. 340, 348, 386, 389, 391, 398, 406.   Likewise, Dr. Colmenares' opinion is consistent with Dr. Fritsch's observations that plaintiff was tearful, agitated, and distraught throughout the examination; highly reactive and not psychologically sophisticated; and not malingering.   *See* Tr. 297.   Dr. Fritsch's report was also consistent with Dr. Colmenares' opinion as he assigned plaintiff a GAF of 45 and opined that she was markedly impaired in her ability to withstand stress and pressures associated with day-to-day work activity.   *See* Tr. 299.   Dr. Colmenares' opinion is also consistent with Dr. Davis' finding that plaintiff's mental health symptoms would impair her ability to sustain full time employment.   *See* Tr. 321.   The Court

18

further notes that Dr. Colmenares' opinion is well-supported by the doctor's detailed narrative

explanations for her findings. *See* Tr. 369-73. The remaining factors also support giving

greater weight to Dr. Colmenares' opinion as: (1) she was plaintiff's treating psychiatrist for six

months and evaluated her every four to six weeks (Tr. 369); (2) her opinion is supported by

clinical observations, detailed explanations, and the psychiatric treatment notes; (3) her findings

are consistent with the opinion of Dr. Davis and Dr. Fritsch's examination report; and (4) she is

rendering an opinion in her area of specialization, *i.e.*, psychiatry. *See* 20 C.F.R. §§

404.1527(c)(2)-(5), 416.927(c)(2)-(5). The ALJ erred by failing to consider these factors in

weighing Dr. Colmenares' opinion.

Further, assuming Dr. Colmenares' opinion is not entitled to controlling weight,

substantial evidence does not support the ALJ's decision to give greater weight to the assessment

of the state agency reviewing psychologist, Dr. Steiger. As the Sixth Circuit explained in

*Gayheart*: "To be sure, a properly balanced analysis might allow the Commissioner to ultimately

defer more to the opinions of consultative doctors than to those of treating physicians."

*Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. No. 96-6p, 1996 WL 374180, at *3). "In

appropriate circumstances, opinions from State agency . . . psychological consultants and other

program . . . psychologists may be entitled to greater weight than the opinions of treating or

examining sources. For example, the opinion of a State agency . . . psychological consultant or

other program . . . psychologist may be entitled to greater weight than a treating source's medical

opinion if the State agency . . . psychological consultant's opinion *is based on a review of a*

*complete case record* that includes a medical report from a specialist in the individual's

particular impairment *which provides more detailed and comprehensive information than what*

19

*was available to the individual's treating source.*" *Id.* (emphasis added). Here, however, the

ALJ adopted the opinion of Dr. Steiger with virtually no analysis and based on her review of an

incomplete record. State agency psychologist Dr. Steiger issued her assessment in February

2010, before plaintiff had commenced her treatment with her psychiatrist and therapist at Butler

Behavioral Health Services in July 2010, and therefore Dr. Steiger was without the majority of

the mental health treatment records in this case. The ALJ adopted Dr. Steiger's opinion because

he determined it was "consistent with the objective medical evidence of record as well as

[plaintiff]'s subjective reports" (Tr. 23), but the ALJ never identified the evidence he relied on to

enable this Court to meaningfully review his decision. In deciding to give "good weight" to Dr.

Steiger's assessment, the ALJ stated only generally that it was consistent with the objective

evidence of record and plaintiff's subjective reports.

For these reasons, the Court finds the ALJ's decision giving Dr. Colmenares' opinions

only "little" and "some" weight is not supported by substantial evidence and does not comply

with controlling Sixth Circuit authority. 20 C.F.R. §§ 404.1527(c)(3)-(6), 416.927(c)(3)-(6);

*Gayheart,* 710 F.3d at 376. Consequently, this matter should be remanded with instructions to

the ALJ to re-evaluate the treating psychiatrist's opinion.

The Court now turns to plaintiff's assertion that the ALJ erred in weighing the medical

source opinion of record regarding her physical impairments.

**Physical Impairment Opinions.** Plaintiff has treated with Dr. Hunter since February

2007. (Tr. 282). In July 2007, Dr. Hunter noted that plaintiff fractured her right ankle while

climbing stairs at her home. The fracture did not heal properly and plaintiff was cleared for

surgery and advised to return for follow up. (Tr. 276). Plaintiff continued to treat with Dr.

Hunter until at least February 20, 2011. (Tr. 245-81, 409-32).

As stated above, Dr. Hunter completed various medical source statements. On January

5, 2010, Dr. Hunter reported plaintiff's diagnoses as degenerative lumbar spine disease, chronic

pain syndrome, anxiety, and depression. (Tr. 285). Dr. Hunter opined that plaintiff has leg

weakness with activity, experiences stiffness in the morning, and has a careful gait with her body

slightly flexed forward and straightened. (Tr. 284). He further opined that plaintiff is not able

to lift more than five to ten pounds; is not capable of distance walking; has poor overhead

reaching and bending; and has problems with standing for long periods with morning stiffness.

(*Id.*). He also reported that plaintiff's symptoms can be exacerbated at any time with any

activity. (*Id.*). Dr. Hunter further opined that plaintiff has anxiety and emotional lability,

depressed mood, anhedonia, sadness, poor sleep, and poor concentration and memory, and is

easily distracted. (*Id.*).

In April 2010, Dr. Hunter opined that plaintiff is limited to standing for 15 minutes at a

time and no more than one hour in and eight-hour workday. Dr. Hunger further opined that

plaintiff could not sit for more than 30 minutes at a time; could lift no more than five pounds; has

extreme limitations in her abilities to push, pull, and bend; and marked limitations in her ability

to reach. (Tr. 322-23).

On July 21, 2010, Dr. Hunter opined that plaintiff is limited to standing 20 minutes at a

time and fewer than two hours in an eight-hour workday. (Tr. 327). He also opined that

plaintiff requires unscheduled breaks every 30 minutes, each lasting five minutes, and that

plaintiff is limited to lifting no more than ten pounds. (Tr. 328).

21

The ALJ gave "some weight" to Dr. Hunter's conclusions from January 2010 but "little weight" to the other opinions. The ALJ determined that Dr. Hunter failed to support the latter opinions regarding plaintiff's purported reaching, handling, or fingering limitations with diagnoses or objective evidence, noting that Dr. Hunter only cited to evidence of plaintiff's back impairment. The ALJ also found that some of Dr. Hunter's conclusions were inconsistent as he stated in January 2010 that plaintiff did not use an ambulatory aid (Tr. 283), but in July 2010 opined that plaintiff required an ambulatory aid. (Tr. 328). The ALJ further determined that Dr. Hunter's extreme limitations in his later opinions were disproportionate to the objective evidence of record and were likely the result of his total reliance on plaintiff's less than credible subjective reports. The ALJ concluded that while the record establishes that plaintiff has some functional limitations, Dr. Hunter's opinion that she is "totally disabled" from all work activity was not supported. (Tr. 28).

Plaintiff argues the ALJ erred in his analysis of Dr. Hunter's opinions because he failed to explain the purported inconsistencies between the objective evidence and the opinions. Plaintiff also challenges the ALJ's determination that Dr. Hunter's opinions are internally inconsistent and asserts they are supported by his treatment notes. Plaintiff's arguments are not well-taken.

First, review of the record supports the ALJ's determination that Dr. Hunter's limitations on plaintiff's ability to reach and handle (Tr. 323, 329) are not supported by objective evidence. Plaintiff cites to no record evidence in her Statement of Errors demonstrating that these limitations are supported by Dr. Hunter's treatment notes or objective or clinical findings. The ALJ is not required to give credence to a treating physician's opinion that is not supported by medical evidence. *See* 20 C.F.R. § 404.1508 (impairment must be established by medical

22

evidence consisting of signs, symptoms and laboratory findings). Review of the record does not reveal basis for these limitations. However, to the extent they are based on plaintiff's statements, the ALJ was not required to give the opinions weight in the absence of supporting objective or clinical evidence. *See* § 404.1528(a) (claimant's own description of impairment is not enough to establish existence of that impairment). *See also Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.") (internal citations and quotations omitted). The Court finds the ALJ reasonably determined that Dr. Hunter's opinions were not supported by medical evidence and discounted them accordingly.

Second, while plaintiff asserts that Dr. Hunter's opinions are internally consistent, she fails to address the ALJ's determination that Dr. Hunter made inconsistent statements with respect to plaintiff's need for an ambulatory aid in his January and July 2010 opinions. *See* Tr. 283, 328. It is indisputable that Dr. Hunter provided two contrary opinions in this regard. In the absence of any supporting argument, plaintiff's blanket assertion that the ALJ erred in finding Dr. Hunter's opinions internally inconsistent is without merit.

Likewise, the ALJ's finding that Dr. Hunter's opinions are not supported by the treatment records is substantially supported. Plaintiff asserts that Dr. Hunter's findings of tenderness near the spine and SI joints and spasm are consistent with his opinions that plaintiff suffers from disabling physical impairments. (Doc. 14 at 11, citing Tr. 247, 262, 265, 269). However, Dr. Hunter's treatment notes also reflect that despite having some spasms and tenderness in her back, plaintiff is not as physically limited as Dr. Hunter states. *See, e.g.*, Tr. 241-42 (in April 2008, plaintiff strained her back painting and had back spasms and trigger point tenderness); Tr. 246

23

(plaintiff strained her back again in September 2009 after cleaning carpets with a carpet cleaner);

Tr. 256 (plaintiff reported that she was active and swimming daily in February 2009); Tr. 424

(plaintiff reported swimming a lot and using an exercise bicycle in July 2010); Tr. 451 (plaintiff

injured herself bicycling in September 2010). Plaintiff's ability to clean carpets, paint, swim,

and bicycle is inconsistent with Dr. Hunter's opinions that plaintiff has extreme physical

limitations. Dr. Hunter's opinions are also inconsistent with his observations in his treatment

notes. Aside from the findings of back spasm and trigger point tenderness, during physical

examinations plaintiff demonstrated good range of motion in all joints, equal strength in all

extremities, and was not observed to be in distress. *See, e.g.*, Tr. 247, 254, 414, 431, 451. The

only objective testing in the record is a February 2009 MRI of plaintiff's lumbar spine which

revealed largely normal findings aside from marginal spurring at T10-11 and L2-3 through L5;

no protrusion, herniation, or evidence of central or foraminal canal compromise was found. (Tr.

458). Further, Dr. Park, the state agency reviewing physician, opined that the record evidence

did not correlate with Dr. Hunter's opinion. (Tr. 294). The ALJ reasonably determined that Dr.

Hunter's extreme limitations were not supported by his own treatment records.

Finally, the ALJ adequately explained the basis for giving Dr. Hunter's opinions little

weight. The ALJ stated that Dr. Hunter's "extreme limitations contained in the later

questionnaires are considerably out of proportion to his objective findings contained in the

[plaintiff]'s treatment records." (Tr. 28). The ALJ's decision detailed Dr. Hunter's limited

treatment records, including the findings of back spasm, trigger point tenderness, and other

normal examination findings. (Tr. 22). Given the scarcity of treatment notes from Dr. Hunter,

the Court finds that the ALJ's summary of the objective evidence reflecting largely normal

findings suffices to explain his decision that Dr. Hunter's opinions that plaintiff has extreme physical limitations are inconsistent with the clinical findings.

For these reasons, the undersigned finds that the ALJ did not err in weighing Dr. Hunter's opinions.

3. The ALJ's credibility finding.

For her final assignment of error, plaintiff asserts the ALJ erred in assessing her credibility. As stated above, the undersigned recommends that this matter be remanded for reconsideration of the opinion evidence from plaintiff's treating psychiatrist. As the ALJ's reconsideration of this opinion evidence may impact the remainder of the ALJ's sequential analysis findings, it is not necessary to address plaintiff's credibility argument. *See Trent v. Astrue*, No. 1:09cv2680, 2011 WL 841529, at *7 (N.D. Ohio Mar. 8, 2011). In any event, even if plaintiff's third assignment of error had merit, the result would be the same, *i.e.*, a remand for further proceedings and not outright reversal for benefits.

**IV. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be remanded for further proceedings, including a determination of the weight to be accorded to the opinion of treating psychiatrist Dr. Colmenares consistent with this decision.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **REVERSED** and **REMANDED** for further

proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).


Date: 2/11/2014

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DEBBIE McQUEEN,             Case No. 1:13-cv-88
       Plaintiff,                Dlott, J.
                                   Litkovitz, M.J.

     vs

COMMISSIONER OF
SOCIAL SECURITY,
       Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.   If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.   A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).

27